1  ARNOLD & PORTER KAYE SCHOLER LLP
   SHARON D. MAYO (CA SBN 150469)
2  sharon.mayo@arnoldporter.com
   Three Embarcadero Center, 10th Floor
3  San Francisco, CA 94111-4024
   Telephone:     415.471.3100
4  Facsimile:     415.471.3400

5  *Counsel for Defendant Bristol-Myers Squibb Company*

6

7                    **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**
8

9

10  KIMBERLY EVANS, OFELIA HENRY,        )    **Case No.** _____
    SARAH KNOEFLER, JAIME LUNA,          )
11  DONALD MATTHEWS, ANNA MILLER,        )
    DEBBIE WYATT, COLIN HAUGE, JAMES     )
12  ANDREWS, VICTORIA AUSTIN, JOSHUA     )    **DEFENDANT BRISTOL-MYERS**
    AVILA, JEFFREY BENNETT, AUREA        )    **SQUIBB CO.'S NOTICE OF REMOVAL**
13  BERGER, CAROLYN BOYD, GINA           )    **OF ACTION PURSUANT TO 28 U.S.C.**
    CLARK, KIM COMBS, IMAN               )    **§§ 1332, 1441, and 1446**
14  DADFOROUZ, KELLY JEAN GARCIA,        )
    ROBERT HANCOCK, NORMA                )    **DEMAND FOR JURY TRIAL**
15  HARDAWAY, JASON HARGROVE,            )
    LINDA HEINICKE, JAMI HENNESSY,       )
16  HEIDI IBITZ-DIAL, BRIAN JOHNSON,     )
    JOSEPH BABY, VALERIE DOBY,           )
17  CHERYL RIESGO, HAROLD WRIGLEY,
    ALICIA ALVARADO, BIRDIE
18  BELLINGER, RONALD CHAVEZ, TERRY
    ABATE, SUSAN AGUILAR, ELISA
19  BEGGS, DARLENE BRONSON,
    TYRONDA BROWN, CHRISTINE
20  BURTON, DEBORAH CARUSO,
    ZACHARIAH CHAMBERLAIN, JEFFREY
21  CHILDERS, CRYSTAL COUCH, SANDY
    DAVIS, JEFFREY ERICKSON, ISSAC
22  FLORES, JAMES GALLO, YOLANDA
    GASTON, LARRY GIVENS, RAHNIKQUA
23  HAGAN, BEVERLY HAM, JASON
    HEINOWITZ, CYNTHIA JACOBS, and
24  LEO JOHNSON,

25                      Plaintiffs,

26

27

28

v.

BRISTOL-MYERS SQUIBB COMPANY,
MCKESSON CORPORATION, OTSUKA
AMERICA PHARMACEUTICAL, INC.,
OTSUKA PHARMACEUTICAL CO.,
LTD., and DOES 1 TO 100,

Defendants.

NOTICE OF REMOVAL

## I.  INTRODUCTION AND FACTUAL BACKGROUND

1.      Plaintiffs here seek to avoid removal of their case to federal court and consolidation with the over 1,500 cases pending in MDL No. 2734, *In re Abilify (Aripiprazole) Products Liability Litigation*, before Chief Judge M. Casey Rodgers of the Northern District of Florida by fraudulently joining an in-state distributor.  Plaintiffs allege the same compulsive behaviors as those alleged in the MDL.  Indeed, Plaintiffs' Complaint here copies almost word-for-word the factual and legal allegations of the MDL Master Complaint.

2.      Tellingly, Plaintiffs' counsel here — which includes a lawyer who applied for, was appointed to, and currently holds a position as a member of the Plaintiffs' Steering Committee in the MDL — has filed over 100 *individual* complaints in the MDL, including those of 66 plaintiffs who reside in the same 14 states as Plaintiffs represented in the *Evans* Complaint.  *None* of those complaints name McKesson or any other distributor as a defendant.

3.      Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and any other applicable laws, Defendant Bristol-Myers Squibb Company ("BMS") hereby gives notice of removal of the above action, entitled *Kimberly Evans et al. v. Bristol-Myers Squibb Company et al.*, bearing Case No. RG18902953, from the Superior Court of the State of California for Alameda County to the United States District Court for the Northern District of California.

4.      On April 30, 2018, Plaintiffs filed this Complaint against Defendants BMS, McKesson Corporation ("McKesson"), Otsuka America Pharmaceutical, Inc. ("OAPI"), Otsuka Pharmaceutical Co., Ltd. ("OPC"), and Does 1-100 in the Superior Court of the State of California for Alameda County.

5.      Defendant BMS has received a copy of, but has not yet been served with, the Complaint.

6.      On information and belief, as of the time of filing of this Notice, neither McKesson nor OAPI nor OPC has been served with the Complaint.

7.      Pursuant to 28 U.S.C. § 1446(a), a true and legible copy of the Summons, Complaint, and Civil Case Cover Sheet is attached as **Exhibit A**.

8.      The *Evans* Complaint is brought by 53 Plaintiffs who allegedly sustained injuries as a result of ingesting Abilify® — a prescription medication for treating Major Depressive Disorder, bipolar I disorder, schizophrenia, irritability associated with Autistic Disorder, and Tourette's Disorder.  The 53 Plaintiffs seem to be unrelated.  Plaintiffs do not allege that they received Abilify® from the same prescribing physician.  They do not allege a common condition for which they were prescribed Abilify®.  They do not allege similarities in length of exposure to Abilify®.

9.      Nor do Plaintiffs allege that they took the same drug.  The Complaint defines "Abilify" to include Abilify®, Abilify Maintena®, and Aristada®.  Ex. A, ¶ 1.  Notably, Defendant BMS was not involved "with the development, design, testing, labeling, packaging, promoting, advertising, marketing, distribution, or selling of" Abilify Maintena® or Aristada®.  *Id.* ¶ 1.

10.      As further set forth below, jurisdiction over this case is proper based on diversity. Complete diversity exists between all properly joined and served Plaintiffs and Defendants.  In addition, Defendant McKesson's citizenship should be disregarded because it has been fraudulently joined.  Similarly, the citizenship of the unnamed Doe Defendants is ignored for removal purposes.

## II.      **INTRADISTRICT ASSIGNMENT**

Pursuant to Local Rule 3-5(b) and Local Rule 3-2(d), this Notice is properly filed in the Oakland Division because the action relates to a case pending before the Superior Court of the State of California for Alameda County.  *See* Beverly Reid O'Connell & Karen L. Stevenson, *Rutter Group Prac. Guide: Fed. Civ. Pro. Before Trial* § 2:3428 (2017) ("[T]he notice of removal should be filed in the division that embraces the county where the state court action was pending.").

## III.      **FEDERAL JURISDICTION**

11.      Defendant BMS removes this action on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

12.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because: (1) there is complete diversity between Plaintiffs and the properly joined Defendants; (2) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (3) all other requirements for removal have been satisfied.

**A.      There Is Complete Diversity Between the Properly Joined Parties.**

13.      The Complaint alleges that Plaintiffs Kimberly Evans, Ofelia Henry, Sarah Knoefler, Jaime Luna, Donald Matthews, Anna Miller, Debbie Wyatt, Colin Hauge, James Andrews, Victoria Austin, Joshua Avila, Jeffrey Bennett, Aurea Berger, Carolyn Boyd, Gina Clark, Kim Combs, Iman Dadforouz, Kelly Jean Garcia, Robert Hancock, Norma Hardaway, Jason Hargrove, Linda Heinicke, Jami Hennessy, Heidi Ibitz-Dial, Brian Johnson, Joseph Baby, Valerie Doby, Cheryl Riesgo, Harold Wrigley, Alicia Alvarado, Birdie Bellinger, and Ronald Chavez are residents of California. Ex. A, ¶¶ 12-43.  Based on the allegations in the Complaint, Plaintiffs Kimberly Evans, Ofelia Henry, Sarah Knoefler, Jaime Luna, Donald Matthews, Anna Miller, Debbie Wyatt, Colin Hauge, James Andrews, Victoria Austin, Joshua Avila, Jeffrey Bennett, Aurea Berger, Carolyn Boyd, Gina Clark, Kim Combs, Iman Dadforouz, Kelly Jean Garcia, Robert Hancock, Norma Hardaway, Jason Hargrove, Linda Heinicke, Jami Hennessy, Heidi Ibitz-Dial, Brian Johnson, Joseph Baby, Valerie Doby, Cheryl Riesgo, Harold Wrigley, Alicia Alvarado, Birdie Bellinger, and Ronald Chavez are all citizens of California.

14.      The Complaint alleges that Plaintiff Terry Abate is a resident of West Virginia.  Ex. A, ¶ 44.  Based on the allegations in the Complaint, Plaintiff Terry Abate is a citizen of West Virginia.

15.      The Complaint alleges that Plaintiffs Susan Aguilar, Jeffrey Childers, and Rahnikqua Hagan are residents of Oklahoma.  Ex. A, ¶¶ 45, 52, 60.  Based on the allegations in the Complaint, Plaintiffs Susan Aguilar, Jeffrey Childers, and Rahnikqua Hagan are citizens of Oklahoma.

16.      The Complaint alleges that Plaintiffs Elisa Beggs, Sandy Davis, and Leo Johnson are residents of Indiana.  Ex. A, ¶¶ 46, 54, 64.  Based on the allegations in the Complaint, Plaintiffs Susan Aguilar, Jeffrey Childers, and Rahnikqua Hagan are citizens of Indiana.

17.      The Complaint alleges that Plaintiff Darlene Bronson is a resident of Pennsylvania. Ex. A, ¶ 47.  Based on the allegations in the Complaint, Plaintiff Darlene Bronson is a citizen of Pennsylvania.

18.     The Complaint alleges that Plaintiffs Tyronda Brown and Yolanda Gaston are residents of Illinois.  Ex. A, ¶¶ 48, 58.  Based on the allegations in the Complaint, Plaintiffs Tyronda Brown and Yolanda Gaston are citizens of Illinois.

19.     The Complaint alleges that Plaintiffs Christine Burton and Cynthia Jacobs are residents of Georgia.  Ex. A, ¶¶ 49, 63.  Based on the allegations in the Complaint, Plaintiffs Christine Burton and Cynthia Jacobs are citizens of Georgia.

20.     The Complaint alleges that Plaintiff Deborah Caruso is a resident of Alaska.  Ex. A, ¶ 50.  Based on the allegations in the Complaint, Plaintiff Deborah Caruso is a citizen of Alaska.

21.     The Complaint alleges that Plaintiffs Zachariah Chamberlain and Beverly Ham are residents of Texas.  Ex. A, ¶¶ 51, 61.  Based on the allegations in the Complaint, Plaintiffs Zachariah Chamberlain and Beverly Ham are citizens of Texas.

22.     The Complaint alleges that Plaintiff Crystal Couch is a resident of Ohio.  Ex. A, ¶ 53.  Based on the allegations in the Complaint, Plaintiff Crystal Couch is a citizen of Ohio.

23.     The Complaint alleges that Plaintiffs Jeffrey Erickson and Issac Flores are residents of Iowa.  Ex. A, ¶¶ 55, 56.  Based on the allegations in the Complaint, Plaintiffs Jeffrey Erickson and Issac Flores are citizens of Iowa.

24.     The Complaint alleges that Plaintiff James Gallo is a resident of Colorado.  Ex. A, ¶ 57.  Based on the allegations in the Complaint, Plaintiff James Gallo is a citizen of Colorado.

25.     The Complaint alleges that Plaintiff Larry Givens is a resident of Louisiana.  Ex. A, ¶ 59.  Based on the allegations in the Complaint, Plaintiff Larry Givens is a citizen of Louisiana.

26.     The Complaint alleges that Plaintiff Jason Heinowitz is a resident of New Jersey.  Ex. A, ¶ 62.  Based on the allegations in the Complaint, Plaintiff Jason Heinowitz is a citizen of New Jersey.

27.     The Complaint alleges that Defendant BMS is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New York.  Ex. A, ¶ 65.  Based on the allegations in the Complaint, BMS is a citizen of Delaware and New York.

28.     The Complaint alleges that Defendant OPC is a Japanese company with its principal place of business in Japan.  Ex. A, ¶ 66.  Based on the allegations in the Complaint, OPC is a citizen of Japan.

29.     The Complaint alleges that Defendant OAPI is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New Jersey.  Ex. A, ¶ 67.  Based on the allegations in the Complaint, OAPI is a citizen of Delaware and New Jersey.

30.     Defendant McKesson is fraudulently joined.  Therefore, its citizenship must be ignored for purposes of determining the propriety of removal.

31.     Defendants Does 1 through 100 are sued under "fictitious names."  Ex. A, ¶ 81.  Therefore, their citizenship must be ignored for purposes of determining the propriety of removal.  *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

32.     Because Plaintiffs are citizens of California, West Virginia, Oklahoma, Indiana, Pennsylvania, Illinois, Georgia, Alaska, Texas, Ohio, Iowa, Colorado, and Louisiana, and all properly joined Defendants are citizens of states other than California, West Virginia, Oklahoma, Indiana, Pennsylvania, Illinois, Georgia, Alaska, Texas, Ohio, Iowa, Colorado, and Louisiana, complete diversity of citizenship exists between Plaintiffs and Defendants.  *See* 28 U.S.C. §§ 1332, 1441.[1]

**B.      Removal Is Proper Because No Forum Defendant Has Been Served.**

33.     This action is removable because no party in interest properly joined and served as a defendant is a citizen of California, the state in which this action was brought (a "forum defendant").  *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in

---

[1]     Based on the allegations of the Complaint, Plaintiff Jason Heinowitz and Defendant OAPI are citizens of New Jersey.  For the reasons detailed below, the Court should dismiss his claims against Defendants BMS, OAPI, and OPC for lack of personal jurisdiction, and may do so before addressing subject-matter jurisdiction.  In addition, and in the alternative, the Court may drop Plaintiff Heinowitz and sever his claims against all Defendants under Rule 21.

interest **properly joined and served as defendants** is a citizen of the State in which such action is brought." (emphasis added)).

34.     Defendant McKesson is alleged in the Complaint to be a citizen of California.  Ex. A, ¶ 71.  Upon information and belief, as of the time of filing of this Notice, McKesson has not been served with process.

35.     Removal is proper where there is complete diversity, and no forum defendant has yet been served.  *City of Ann Arbor Employees' Retirement Sys. v. Gecht*, No. C-06-7453 EMC, 2007 WL 760568, at *8 (N.D. Cal. Mar. 9, 2007) (denying plaintiff's motion for remand, where, as here, a non-forum defendant had removed the action when the alleged forum defendants had not been properly joined and served); *Carreon v. Alza Corp.*, No. C 09–5623 RS, 2010 WL 539392, at *1 (N.D. Cal. Feb. 9, 2010) (same); *Waldon v. Novartis Pharm. Corp.*, No. C07-01988 MJJ, 2007 WL 1747128, at *2 (N.D. Cal. June 18, 2007) (denying remand when "McKesson was not properly 'joined and served' at the time of removal as required by 28 U.S.C. Section 1441(b)."); *Goodwin v. Reynolds*, 2:12-CV-0033-SLB, 2012 WL 4732215, at *5-6 (N.D. Ala. Sept. 28, 2012) (denying remand and noting that "the 'majority' of courts follow the plain language of 1441(b) and allow non-forum defendants to remove where a forum defendant remains unserved"); *id.* at *5 n.6 ("[T]he removal statutes contain no waiting period regarding how quickly defendants may remove a case but instead limit removal to thirty days with certain qualifications."); *see also Regal Stone Ltd. v. Longs Drug Stores Cal., LLC*, No. 11–4540 SC, 2012 WL 685756, at *4 (N.D. Cal. May 4, 2012) (denying remand after the passage of the Federal Courts Jurisdiction and Venue Clarification Act, finding "[t]he Court is therefore bound to take Congress's preservation of Section 1441's 'properly joined and served' language as an endorsement").[2]

---

[2]     Congress has enacted legislation reaffirming that an action may be removed on the basis of diversity jurisdiction when a forum defendant is not properly joined or served at the time of removal.  The "Federal Courts Jurisdiction and Venue Clarification Act of 2011" amended the removal and remand procedures in 28 U.S.C. § 1441, but retained the language in section 1441(b) that bars removal only if any "of the parties in interest **properly joined and served** as defendants is a citizen of the State in which such action is brought."  Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63 § 103, 125 Stat. 758, 760 (2011) (emphasis added).

36.     In the present case, because Plaintiffs have not "properly joined and served" any forum defendant, any such defendant's alleged citizenship in California is not an impediment to removal under 28 U.S.C. § 1441(b).

**C.      The New Jersey Citizenship of Plaintiff Jason Heinowitz Does Not Destroy Diversity**

37.     Based on the allegations of the Complaint, Plaintiff Jason Heinowitz and Defendant OAPI are citizens of New Jersey.

38.     The New Jersey citizenship of Plaintiff Heinowitz does not destroy diversity because:  (1) the Court lacks personal jurisdiction over his claims against Defendants BMS, OAPI, and OPC, and his claims against McKesson are ignored because McKesson is fraudulently joined, and (2) the Court can and should exercise its discretion under Rule 21 to drop Plaintiff Heinowitz and sever his claims against all Defendants to perfect diversity jurisdiction.

39.     *First*, the Court should decide whether Defendants BMS, OAPI, and OPC are subject to personal jurisdiction in California for Plaintiff Heinowitz's claims before wading into the question of subject matter jurisdiction, including fraudulent joinder.  Where, as here, the district court "has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question," it may properly decide personal jurisdiction first.  *Livingston v. Hoffmann-La Roche Inc.*, No. 17 C 7650, 2018 WL 1183762, at *3 (N.D. Ill. Mar. 7, 2018) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999)).

40.     In the wake of the U.S. Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), which held that Defendant BMS was not subject to personal jurisdiction in California for personal injury claims of nonresident plaintiffs who allegedly were prescribed, ingested, and were injured by a BMS drug in their home states, a growing number of district courts have decided personal jurisdiction first because it is now a much more straightforward question than subject matter jurisdiction, particularly where the doctrines of fraudulent joinder or fraudulent misjoinder are at issue.  *See, e.g.*, *Livingston*, 2018 WL 1183762, at *4 ("[T]he personal jurisdiction issue raised by the Roche Defendants is straightforward . . . .

- 8 -

Because Plaintiff has clearly failed to meet his burden of establishing personal jurisdiction over the Roche Defendants, we exercise our discretion in deciding that issue first."); *Dyson v. Bayer Corp.*, 2018 WL 534375, at *3 (E.D. Mo. Jan. 24, 2018) (deciding personal jurisdiction first because it was "the more straightforward inquiry," whereas questions of fraudulent joinder or misjoinder were "a notoriously complex issue"); *BeRousee v. Janssen Research & Dev., LLC*, 2017 WL 4255075, at *3 (S.D. Ill. Sept. 26, 2017) ("[P]ersonal jurisdiction is the more straightforward inquiry—and [should be] analyze[d] before addressing challenges to subject-matter jurisdiction . . . ."); *Covington v. Janssen Pharm., Inc.*, 2017 WL 3433611, at *2-3 (E.D. Mo. Aug. 10, 2017) (same); *Turner v. Boehringer Ingelheim Pharms., Inc.*, 2017 WL 3310696, at *2 (E.D. Mo. Aug. 3, 2017) (same).

41.    Here, as in *Bristol-Myers* and the other cases cited above, Plaintiff Heinowitz is not a resident of the forum state (California) and "do[es] not claim to have suffered harm in that State." *Bristol-Myers Squibb*, 137 S. Ct. at 1782.

42.    The Complaint alleges only that Plaintiff Heinowitz "is a resident of Tinton Falls, New Jersey, and was prescribed Abilify in Monmouth County," in New Jersey.  Ex. A, ¶ 62.

43.    The Complaint does not allege any facts that would link Plaintiff Heinowitz's claims against Defendants BMS, OAPI, and OPC to California.  As the Supreme Court explained, "[f]or specific jurisdiction, a defendant's general connections with the forum are not enough."  *Bristol-Myers Squibb*, 137 S. Ct. at 1781.  "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."  *Id.*; *see also id.* ("[T]he nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California.").

44.    "To support the exercise of specific personal jurisdiction, the defendant's suit-related conduct must create a substantial connection with the forum State.'"  *Livingston*, 2018 WL 1183762, at *5 (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)).[3]  But there are few, if any,

---

[3]    Following the U.S. Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), general jurisdiction over Defendants BMS, OAPI, and OPC is "clearly lacking."  *Bristol-Myers*, 137 S. Ct. at 1778 (noting that Defendant BMS is plainly not subject to general jurisdiction in California).

allegations linking the conduct of Defendants BMS, OAPI, and OPC— specifically with respect to Plaintiff Heinowitz's claims—to California, let alone enough to create a substantial connection.

45.      Nor is the alleged relationship of Defendants BMS, OAPI, and OPC with Defendant McKesson a basis for a California court to exercise personal jurisdiction.  *See id.* at 1783 ("The bare fact that BMS contracted with a California distributor is not enough to establish personal jurisdiction in the State.").  Moreover, the Court noted the plaintiffs' concession that "[i]t is *impossible* to trace a particular pill to a particular person," and so it was "not possible . . . to track particularly to McKesson."  *Id.*

46.      Accordingly, the Court should dismiss Plaintiff Heinowitz's claims against Defendants BMS, OAPI, and OPC for lack of personal jurisdiction before addressing subject matter jurisdiction.[4]  And for the reasons explained in the next section, Defendant McKesson's "presence in the lawsuit is ignored for purposes of determining diversity" because it is fraudulently joined.  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

47.      *Second*, in the alternative, or in addition, the Court may drop Plaintiff Heinowitz (including his claims against *all* Defendants) or sever his claims against Defendant McKesson under Rule 21.  "Even absent a finding of improper joinder, Rule 21 of the Federal Rules of Civil Procedure authorizes a court, in an exercise of its discretion, to sever non-diverse parties to establish federal jurisdiction."  *In re: Incretin Mimetics Prod. Liab. Litig.*, No. 13MD2452 AJB (MDD), 2015 WL 12699872, at *3 (S.D. Cal. July 28, 2015); *see also, e.g.*, *Suruki v. Ocwen Loan Servicing, LLC*, No. 15-CV-00773-JST, 2016 WL 7178549, at *2 (N.D. Cal. Dec. 8, 2016) (dismissing a dispensable party "in order to 'perfect its diversity jurisdiction'" (quoting *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980))), *appeal filed*, No. 17-15039 (9th Cir. Jan. 9, 2017).

48.      "The court may sever the claims against a party in the interest of fairness and judicial economy and to avoid prejudice, delay or expense."  *Apple Inc. v. Wi-LAN Inc.*, No. C 14-2838 CW, 2014 WL 4477362, at *3 (N.D. Cal. Sept. 11, 2014) (citing *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1296–97 (9th Cir. 2000)).  A court may exercise its discretion under Rule 21 "so long as no

---

[4]      For these same reasons, the Court may also dismiss for lack of personal jurisdiction the claims of *all* nonresident Plaintiffs against Defendants BMS, OAPI, and OPC.

1    substantial right will be prejudiced by the severance." *Id.* (quoting *Coughlin v. Rogers*, 130 F.3d

2    1348, 1350 (9th Cir. 1997)).

3        49.     Plaintiff Heinowitz is clearly a dispensable party.  In a mass tort action such as this,

4    "[e]ach Plaintiff has an individual and distinct claim against Defendants, and it is entirely possible

5    to accord complete relief among the remaining parties in each of the individual Plaintiff's actions."

6    *In re Depakote Alexander v. Abbott Labs., Inc.*, 2016 WL 6563483, at *2 (dropping seven cases

7    from a mass action where nondiverse plaintiffs would have destroyed diversity); *see also id.*

8    ("Combining multiple claims into a single complaint does not make each individual claim

9    indispensable from the others."  (citing *LeBlanc v. Cleveland*, 248 F.3d 95 (2d Cir. 2001))).[5]

10           **D.     Fraudulent Joinder of Defendant McKesson**

11       50.     In addition, Defendant McKesson is not a proper party to this case, and its California

12   citizenship should therefore be disregarded for purposes of removal, because it has been

13   fraudulently joined.  28 U.S.C. § 1441(b) (diversity jurisdiction is proper "if none of the parties in

14   interest *properly joined* and served as Defendants is a citizen of the State in which such action is

15   brought" (emphasis added)).

16       51.     A defendant is fraudulently joined and its presence in the lawsuit is ignored for

17   purposes of determining diversity where no viable cause of action has been stated against it.  *See*

18   *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (a defendant is fraudulently

19   joined "if the plaintiff fails to state a cause of action against the resident defendant, and the failure is

20   obvious according to the settled rules of the state") (citing *McCabe v. Gen. Foods Corp.*, 811 F.2d

21   1336, 1339 (9th Cir. 1987)); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)

22   (same).

23       52.     Defendant McKesson is fraudulently joined because:  (1) Plaintiffs do not allege *any*

24   tortious conduct on the part of McKesson, let alone specific allegations of misstatements or fraud,

25   that might suggest that McKesson *caused their specific injuries*, and (2) McKesson, *as a mere*

26   *distributor, is not liable* under any cause of action alleged in the complaint.

27   ───────────────

28   [5]     For these same reasons, the Court may also drop or sever the claims of other nonresident
     Plaintiffs from the California Plaintiffs and Plaintiff Heinowitz.

53.     *First*, the Complaint is devoid of non-conclusory allegations concerning McKesson as they relate to these Plaintiffs.  Indeed, Plaintiffs allege that McKesson is the "agent" and "alter ego" of the other Defendants.  Ex. A, ¶¶ 74-75.

54.     Plaintiffs provide only a conclusory allegation "[u]pon investigation and belief," that "McKesson manufactured[,] marketed, sold and distributed the Abilify administered to Plaintiffs," Ex. A, ¶ 73.  But Plaintiffs cannot plausibly allege this, let alone "show how or by whom the [Abilify] they took was distributed to the pharmacies that dispensed it to them."  *Bristol-Myers*, 137 S. Ct. at 1783.  As the U.S. Supreme Court noted in the *Bristol-Myers* case, which involved another drug distributed by McKesson, "[i]t is impossible to trace a particular pill to a particular person. . . . It's not possible for [a Plaintiff] to track particularly to McKesson." *Id.*[6]

55.     As to Plaintiffs' purported injuries, the Complaint groups McKesson together with all "Defendants" and alleges:  "This is an action for damages related to Defendants' wrongful conduct in connection with the development, design, testing, labeling, packaging, promoting, advertising, marketing, distribution, and selling of Defendants' prescription drug(s) Abilify®, Abilify Maintena®, and Aristada® (hereinafter "Abilify") . . . .  Because of Defendants' actions and inactions, Plaintiffs were injured and suffered damages from their use of Abilify." Ex. A, ¶¶ 1, 8.[7]

56.     In other pharmaceutical actions, courts have found drug distributors — and McKesson in particular — to have been fraudulently joined when there was no allegation in the complaint that the distributor disseminated the drugs that caused the plaintiffs' injuries.  *See Aronis v. Merck & Co.*, No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005) ("The complaint does not state a cause of action against McKesson, and that failure is obvious . . . .

---

[6]     As support for their threadbare allegations about McKesson, Plaintiffs allege that "McKesson Specialty Health, a division of McKesson, lists Abilify in its catalog of available products." Ex. A, ¶ 80.  But based on publicly available information, it appears that "McKesson Specialty Health operates as a *subsidiary* of McKesson Corporation." *McKesson Specialty Health: Private Company Information*, Bloomberg, https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapid=274032825 (emphasis added).

[7]     McKesson is specifically named in a handful of paragraphs in the Complaint. Ex. A, ¶¶ 70-75, 81.  Most of these paragraphs concern identification of the parties, and identification as it relates to jurisdiction.

Plaintiff makes no allegation that McKesson ever handled the specific pills that were allegedly the cause of her injuries."); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, MDL No. 2385, 2013 WL 656822, at *5 (S.D. Ill. Feb. 22, 2013) (finding fraudulent joinder of McKesson because "generic allegations as to all of the defendants [did] not establish that McKesson . . . was, in any way, responsible for the product that allegedly caused the plaintiffs' injuries."); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2010 WL 3937414, at *7, 9 (S.D. Ill. Oct. 4, 2010) (because plaintiffs only alleged that McKesson "may have distributed the subject drugs," they failed to "bring sufficient allegations as to McKesson under any traditional tort theory . . . [and] the Court ha[d]  no choice but to conclude that there [wa]s no reasonable possibility that a state court would find that the Complaints . . . state a cause of action against McKesson").

57.      For example, in *Aronis*, the plaintiff filed a product liability complaint against drug manufacturer Merck and pharmaceutical distributor McKesson arising from her use of the prescription drug Vioxx.  *Aronis*, 2005 WL 5518485, at *1.  As to the in-state defendant McKesson, the plaintiff alleged only that "Vioxx is manufactured and distributed by the defendants."  *Id.*  She failed to make any allegations that McKesson distributed the drugs that she specifically ingested and that caused her injuries, but instead argued that remand was appropriate because McKesson was a major distributor of Vioxx.  *Id.*  The court disagreed and found McKesson to be fraudulently joined.  *Id.* ("The allegation that McKesson is a major distributor of Vioxx, even though taken as true at this stage, is not enough to support a claim against McKesson.  To state a claim against a defendant, a plaintiff must allege a causal connection between the injury and the conduct of that defendant.") (citations omitted).

58.      Plaintiffs also cannot rely on their common allegations against "all Defendants."  *See* Cal. R. Ct. 2.112 (each cause of action must specifically state "[t]he party or parties to whom it is directed (e.g., 'against defendant Smith')"); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, MDL No. 1047, No. C02-423R, 2002 WL 34418423, at *2-3 (W.D. Wash. Nov. 27, 2002) (in product liability action involving over-the-counter medication, court found fraudulent joinder because generalized allegations directed toward "defendants" or "all defendants" were insufficient

- 13 -

1    to state a claim against defendant retailer).  Plaintiffs' failure to make sufficient material and

2    particular allegations against McKesson is indicative of fraudulent joinder.  *See, e.g.*, *Brown v.*

3    *Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (in-state defendants fraudulently

4    joined where "no material allegations against [the in-state defendants] were made"); *Lyons v. Am.*

5    *Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (there

6    is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the

7    plaintiff to "set forth any specific factual allegations" against them).

8           59.    Indeed, many federal courts have held that allegations against "defendants,"

9    collectively, are insufficient to support remand.  *See, e.g.*, *Badon v. R J R Nabisco Inc.*, 224 F.3d

10   382, 391–93 (5th Cir. 2000) (affirming finding of fraudulent joinder where plaintiff's claims simply

11   referred to "defendants" collectively and where plaintiffs failed to allege any "particular or specific

12   activity" on the part of each of the in-state defendants); *Staples v. Merck & Co., Inc.*, 270 F. Supp.

13   2d 833, 844 (N.D. Tex. 2003) (allegation that "Defendants committed actual fraud" insufficient to

14   warrant remand); *Banger v. Magnolia Nursing Home*, L.P., 234 F. Supp. 2d 633, 638 (S.D. Miss.

15   2002) ("conclusory and generic allegations of wrongdoing on the part of all Defendants … are not

16   sufficient to show that [non-diverse defendant] was not fraudulently joined"); *In re Rezulin Prods.*

17   *Liab. Litig*, 168 F. Supp. 2d 136, 140 & n.10 (S.D.N.Y. 2001) (remand should be denied where

18   "plaintiffs make no specific allegations against [the non-diverse defendant] at all, instead [they]

19   attribut[e] wrongdoing to the collective 'defendants'"); *In re Rezulin*, 133 F. Supp. 2d at 291

20   (finding fraudulent joinder where plaintiffs "lump" non-diverse and diverse defendants together

21   "and attribute the acts alleged … to the 'defendants' generally"); *Salisbury v. Purdue Pharma, L.P.*,

22   166 F. Supp. 2d 546, 550 (E.D. Ky. 2001) (denying remand where the complaint "commonly

23   employs the generic term 'defendants'"); *Sherman v. Stryker*, No. SACV09-224JVS, 2009

24   2241664, at *2–3 (C.D. Cal. Mar. 30, 2009) (dismissing negligent and fraudulent misrepresentation

25   claims in a products liability action where plaintiff "does not differentiate these claims as to [one

26   defendant] and the other defendants" and fails to "specifically allege 'the role of each defendant in

27   each scheme'" (quoting *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405

28   (9th Cir. 1991))).

60.     Such allegations are particularly inadequate where, as here, "plaintiffs' complaint commonly employs the generic term 'defendants,' [but] the context and nature of the individual allegations make clear that only the drug companies are targeted." *Salisbury*, 166 F. Supp. 2d at 550.  Other than the generic boilerplate allegations that McKesson distributed Abilify, the Complaint is devoid of any particular facts or specific allegations that would give rise to liability of McKesson.

61.     Plaintiffs' claims sounding in failure to warn, negligent misrepresentation and fraud also fail because (1) Plaintiffs do not identify a single statement made by McKesson that was allegedly fraudulent or deceptive, (2) Plaintiffs fail to allege any fact that was concealed that McKesson had a duty to disclose as a mere distributor of a product, and (3) Plaintiffs have not alleged any connection between conduct of McKesson and Plaintiffs' alleged injuries from Abilify that could satisfy the cause-in-fact elements of these claims, including claims for fraud which must be pled with particularity under Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.").

62.     Blanket allegations of purported generic misrepresentations by manufacturing defendants cannot be attributed to McKesson and cannot defeat diversity jurisdiction.  *See, e.g.*, *Fisher v. Paul Revere Ins. Grp.*, 55 F. App'x 412, 414 (9th Cir. 2003) (affirming trial court's determination that non-diverse defendant had been fraudulently joined and refusal to remand case to state court where the plaintiff "did not specifically allege facts that would support any elements of deceit" for the non-diverse defendant, as required by Rule 9(b)); *In re Rezulin*, 133 F. Supp. 2d at 283 (finding defendant sales representatives fraudulently joined because plaintiffs did not satisfy Rule 9(b)'s requirements); *Bentley v. Merck & Co., Inc.*, No. 17-1340, 2017 WL 2311299, at *3 (E.D. Pa. May 26, 2017) (holding that improper joinder "cannot be used to undermine [a district] court's power to adjudicate an action where diversity of citizenship between or among the parties and the requisite amount in controversy otherwise exists").

- 15 -

63.     Plaintiffs allege, for example, that BMS instructed it sales representatives "to deliberately lie to and/or mislead their audiences," and cited an instance of alleged deception involving BMS employees.  *See* Ex. A, ¶ 133.  But there is no allegation that *McKesson* was involved with these alleged efforts to deceive or that *McKesson* directed any particular false statement that was relied upon by Plaintiffs or their treating physicians.  Absent specific allegations about McKesson's supposed misrepresentations or detrimental reliance thereon, Plaintiffs' conclusory statement that "McKesson . . . distributed the Abilify administered to Plaintiffs" is of no moment. Ex. A, ¶ 73.  Plaintiffs' claim against McKesson fails because Plaintiffs have failed to identify any specific statements that McKesson made or was obligated to make as a distributor of pre-packaged prescription medication.

64.     In another product liability suit where plaintiffs named McKesson as a defendant, a California court recently noted the futility of the plaintiffs' claims against McKesson:  "The Supreme Court held [in *Bristol-Myers*], that the 'bare fact that BMS contracted with a California distributor is not enough to establish personal jurisdiction in the State.'  The Supreme Court observed that the plaintiffs had "adduced no evidence to show how or by whom the Plavix they took was distributed to the pharmacies that dispensed it to them." *Plavix Prod. & Mktg. Cases*, S.F. Super. Ct. Jud. Council Coordinated Proceeding No. 4748, August 23, 2017 Order (Ex. B) at 5 (refusing to reopen jurisdictional discovery as to defendant McKesson) (internal citations omitted).

65.     *Second,* the claims against McKesson — which, despite different labels, are all based on alleged failure-to-warn — fail as a matter of law and are otherwise preempted.  As a preliminary matter, California courts have held that individuals and entities, such as pharmacies, that are not involved in the manufacture or labeling of a prescription medication are not to be held liable for alleged product defects. *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672 (1985).  In declining to recognize product liability claims against pharmacists, the court noted that "[t]he pharmacist is in the business of selling prescription drugs, and his role begins and ends with the sale." *Id.* at 679.  If individuals or entities that do not manufacture, label or design prescription products are held liable, they "might restrict availability [of important medications] by refusing to dispense drugs which

pose even a potentially remote risk of harm, although such medications may be essential to the health or even the survival of patients." *Id.* at 680–81.

66.    Likewise, California courts have held that there is no viable cause of action for failure to warn or otherwise against intermediate distributors of pharmaceutical medications, such as McKesson. *See, e.g.*, *Skinner v. Warner-Lambert Co.*, No. CV 03-1643-R(RZX), 2003 WL 25598915 (C.D. Cal. Apr. 28, 2003). The court in *Skinner* held "there is no possibility that plaintiffs could prove a cause of action against McKesson, an entity which distributed [the] FDA-approved medication to pharmacists in California." *Id.* at *1; *see also Leeson v. Merck & Co.*, No. S-05-2240 WBS PAN, 2006 WL 3230047, at *3 (E.D. Cal. Jan. 27, 2006) ("Yet only a handful of judges have found that California law does not clearly exempt distributors from strict liability for failure to warn."). As in *Skinner*, there is no possibility of recovery against McKesson in this case.

67.    Plaintiffs' claims against McKesson are also preempted under the Supreme Court's decisions in *Pliva, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), and *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013). *See, e.g.*, Ex. A, ¶ 156 (in design strict liability cause of action, alleging that Abilify® was "defective due to inadequate warnings or instructions concerning the true risks of its use"); *id.* ¶ 181 (in negligence cause of action, alleging that Defendants "fail[ed] to exercise due care in the provision of adequate warnings of Abilify's dangerous propensities"); *id.* ¶¶ 173-74 (in breach of implied warranty cause of action, alleging that "Abilify was not of merchantable quality or sale or fit for its intended use, because the product was, and is, unreasonably dangerous, defective and unfit for the ordinary purposes for which Abilify was used" and that "the design of Abilify makes the product unreasonably dangerous"); *id.* ¶ 165 (in breach of express warranty cause of action, alleging that "Abilify was unaccompanied by warnings of its dangerous propensities that were either known or should have been known to Defendants"); *id.* ¶¶ 217-18 (in fraudulent concealment cause of action, alleging that "Defendants were under a duty to Plaintiffs to disclose and warn of the defective nature of Abilify" and failed to do so); *id.* ¶ 193 (in negligent misrepresentation claim, alleging that "Defendants misrepresented to consumers and physicians, including Plaintiffs and Plaintiffs' physicians and the public in general, that Abilify was safe or well-tolerated when *used as instructed*") (emphasis added); *id.* ¶ 194(e) (in Violation of Cal.

- 17 -

Bus. & Prof. Code § 17200 cause of action, alleging that Defendants engaged in unlawful practice, including failing to "disseminate to prescribing physicians appropriate and required product safety information"); *id.* ¶ 201(a) (in Violation of Cal. Civ. Code § 17500 claim, alleging Defendants "conceal[ed] that Abilify had a serious propensity to cause harm to users" and otherwise "[r]epresent[ed] that Abilify was safe, fit, and effective for human consumption"); *id.* ¶ 210(a) (same in Violations of Cal. Civ. Code § 1750 claim).

68. Moreover, the Supreme Court's decision in *Mensing* clarified the preemption doctrine as it relates to manufacturers of generic drugs. In *Mensing*, two plaintiffs brought product liability actions against manufacturers of generic prescription drugs. *Mensing*, 131 S. Ct. at 2573. The generic manufacturers argued that, under federal drug regulations, they are "prevented [ ] from independently changing their generic drugs' safety labels." *Id.* at 2577. Consequently, they argued, holding them liable under state law for failure to "adequately and safely label their products," would directly conflict with labeling requirements under federal law. *Id.* The Supreme Court agreed: Because generic manufacturers are unable to comply with both state and federal law, state failure-to-warn claims against generic drug manufacturers must be preempted. *Id.* at 2577-78, 2581 ("If the Manufacturers had independently changed their labels to satisfy their state-law duty [to attach a safer label], they would have violated federal law.").

69. Under its decision in *Bartlett*, the Court further held that "state-law design-defect claims that turn on the adequacy of a drug's warnings are preempted under federal law under [*Mensing*]." 133 S. Ct. at 2470. The Court explained that generic manufacturers cannot redesign a drug because federal law "requires a generic drug to have the same active ingredients, route of administration, dosage form, strength, and labeling as the brand-name drug on which it is based." *Id.* at 2475 (citations omitted). Moreover, "[a]s [*Mensing*] made clear, federal law prohibits generic drug manufacturers from changing their labels." *Id.* at 2476. State-law design-defect claims are therefore preempted "[b]ecause it is impossible for [generic] manufacturers to comply with both state and federal law." *Id.* at 2477.

70. The same preemption analysis articulated by the Supreme Court in *Mensing* and *Bartlett* works to bar claims against pharmaceutical distributors that stand even further removed

than generic manufacturers from the ability to change drug labeling and other warnings.  The crux of Plaintiffs' claims against McKesson is that, independent of BMS and Otsuka, McKesson should have warned about the risks not included in the Abilify® product labeling.  Had it done so, McKesson would have been subject to potential civil and/or criminal penalties for "misbranding." 21 U.S.C. §§ 333, 334.

71.     FDA regulations on misbranding prohibit any person, including a pharmaceutical distributor, from issuing any warning that is not consistent with the drug's FDA-approved labeling. 21 C.F.R. § 201.100(d)(1).  Under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* (the "FDCA"), when the FDA approves a drug for marketing, it also approves the drug's labeling, including information about the drug's potential risks and benefits.  21 U.S.C. § 355(d). All other materials disseminated by pharmaceutical distributors about a drug's risks and benefits, including promotional materials and "Dear Doctor" letters, must be "consistent with and not contrary to . . . the approved or permitted labeling."[8]  21 C.F.R. § 201.100(d)(1); 73 Fed. Reg. 2848, 2850 n.3 (2008) ("Federal law governs not only what information must appear in labeling, but also what information may not appear.").  If a distributor issued warnings about a drug that were not approved by the FDA and that were inconsistent with the approved labeling, it would subject itself to possible civil and/or criminal penalties for misbranding.[9]  21 U.S.C. §§ 333, 334.  In other words, if McKesson had gone beyond the approved labeling for Abilify®, it may have been liable for federal penalties for misbranding.

---

[8]     21 U.S.C. § 321(m) (labeling includes "all labels and other written, printed, or graphic matter"); 21 C.F.R. § 1.3 (same).  Thus, the term "labeling" includes more than the printed package insert.

[9]     The FDCA and regulations provide that a drug is misbranded if its labeling is "false and misleading in any particular."  21 U.S.C. § 352(a); *id.* § 321(n); *id.* § 331(a), (b), (k); 21 C.F.R. § 201.6(a).  A statement about a drug's risks would be considered "false and misleading" if it has not been found by the FDA to be properly substantiated.  40 Fed. Reg. 28,584 (1975) ("In short, a drug is misbranded if its labeling makes claims that have not been properly substantiated.").  By definition, an unapproved warning by a distributor that is inconsistent with the approved drug labeling would not have been found to be substantiated by the FDA and, thus, would likely constitute misbranding.

72.     Nor could McKesson change the approved product labeling.  Only the party that submits the New Drug Application (the "NDA") to obtain FDA approval to market a drug can seek to change the drug's labeling after initial approval.[10]  21 C.F.R. § 314.71(a) ("*Only the applicant may submit a supplement to an application.*") (emphasis added); *id.* § 314.70(a)(4) ("The *applicant* must promptly revise all promotional labeling and advertising to make it consistent with any labeling change implemented . . . .") (emphasis added).  Here, McKesson is not the applicant[11] for the Abilify® NDA and, therefore, has no authority to seek any changes to the drug's labeling.[12]

73.     For this very reason — *i.e.*, that a distributor is not the NDA holder — the District of New Jersey found failure-to-warn claims against a distributor of a brand-name prescription drug to be preempted.  In *In re Fosamax*, plaintiffs named distributors of Fosamax — Watson

---

[10]     Major labeling changes require the FDA's prior approval through submission of a Prior Approval Supplement ("PAS").  21 C.F.R. § 314.70(b).  Certain other changes may be made without advanced FDA approval through the Changes Being Effected ("CBE") regulations.  21 C.F.R. § 314.70(c).  The federal regulations make clear that only the NDA holder can apply for these supplemental changes.  21 C.F.R. § 314.70(a) (requiring "*the applicant*" and "*holder of an approved application*" to submit changes to the FDA); *id.* § 314.70(b)(3) ("*The applicant* must obtain approval of a supplement from FDA [for major changes under the PAS procedure].");*id.* § 314.70(c)(6) ("*[T]he holder of an approved application* may commence distribution of the drug product involved upon receipt by the agency of the supplement for the change [under the CBE procedure].") (emphases added).  *See Mensing*, 131 S. Ct. at 2575 ("The FDA denies that the [generic] Manufacturers could have used the CBE process to unilaterally strengthen their warning labels. . . . We defer to the FDA's interpretation of its CBE and generic labeling regulations.") (citations omitted).  *See also* 21 U.S.C. § 355(o)(4)(A) (FDA contacts the brand-name manufacturer to initiate safety changes in drug labeling).

[11]     FDA, Drugs@FDA Glossary of Terms, http://www.fda.gov/Drugs/informationondrugs/ucm079436.htm (last visited April 24, 2018) ("Company:  The company (also called applicant or sponsor) submits an application to FDA for approval to market a drug product in the United States.").

[12]     Moreover, McKesson is not required to exert pressure to make labeling changes on third parties who can implement such changes, namely the NDA holder or the FDA.  The Supreme Court in *Mensing* rejected the argument that preemption turns on whether a defendant who is not the NDA applicant asked the FDA to initiate any labeling changes.  *Mensing*, 131 S. Ct. at 2579 ("The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it. . . . We can often imagine that a third party or the Federal Government *might* do something that makes it lawful for a private party to accomplish under federal law what state law requires of it."); *id.* at 2580 ("To consider in our pre-emption analysis the contingencies inherent in these cases . . . would be inconsistent with the *non obstante* provision of the Supremacy Clause.").

Pharmaceuticals and Watson Laboratories ("Watson") — as defendants in a product liability suit. *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243 (JAP-LHG), 2012 WL 181411, at *1 (D.N.J. Jan 17, 2012).  To circumvent *Mensing*, instead of relying on Watson's role as a generic manufacturer, the plaintiffs also alleged that that "Defendant Watson was what is known as an authorized distributor of branded Fosamax." *Id.*  Nevertheless, Watson argued, and the District of New Jersey agreed, that *Mensing* should apply because "[a]s a distributor of Fosamax, Watson has no power to change Fosamax labeling.  That power lies with the applicant who filed the New Drug Application (NDA) seeking approval to market Fosamax." *Id.* at *3 (citations omitted); *see also Stevens v. Cmty. Health Care Inc.*, No. ESCV200702080, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011) ("As a distributor, however, DAVA had no ability to change labeling or warnings and thus, like a generic manufacturer, DAVA cannot be subject to liability in connection with a state law claim premised on a 'failure to warn.'").

74.     Likewise here, McKesson, which is alleged simply to be a distributor of Abilify®, cannot be liable under the state law theories asserted in the Complaint.  McKesson has no ability lawfully to alter the Abilify® labeling, and to subject McKesson to liability here would conflict directly with federal law governing prescription drug labeling.  Such state claims are therefore preempted, and Plaintiffs have not stated a viable claim against McKesson.[13]

75.     BMS recognizes that Judge Edward M. Chen previously remanded eight actions removed to this Court from San Francisco County Superior Court, but respectfully disagrees with that decision.  *Caouette v. Bristol-Myers Squibb Co.*, No. C-12-1814 EMC, 2012 WL 3283858 (N.D. Cal. Aug. 10, 2012).  BMS is removing this case because it respectfully believes removal is well founded on the merits for the following reasons.

76.     The decision in *Caouette* did not actually address the argument that failure-to-warn claims against a pharmaceutical distributor are preempted, deciding instead to rely on plaintiffs'

---

[13]     Although some California federal courts have previously rejected arguments that pharmaceutical distributors were fraudulently joined, these cases largely predate *Mensing* and/or did not directly address whether *Mensing* barred failure-to-warn claims against McKesson.  The Supreme Court and the Ninth Circuit have not considered whether implied preemption bars product liability claims against a distributor of prescription drugs in the fraudulent joinder context.

design defect claims. *Caouette*, 2012 WL 3283858, at *3–4. As to those claims, we respectfully submit that the decision did not squarely address and decide whether the *Mensing* rationale also applies to preempt design defect claims against McKesson, an issue which must be decided here to determine whether jurisdiction is proper. *Id.* at *5 & n.5. Instead of relying on the majority of courts that have found the *Mensing* preemption rationale equally applicable to design defect claims,[14] the Court in *Caouette* granted remand because of perceived uncertainty on this issue created in large part by *Bartlett v. Mutual Pharmaceutical Co.*, 678 F.3d 30 (1st Cir. 2012). *Caouette*, 2012 WL 3283858, at *4. As discussed above, the Supreme Court reversed the First Circuit's decision in *Bartlett* cited by Judge Chen and held that design defect claims, like those here, are also preempted under the *Mensing* doctrine, thus undermining the rationale on which the Court relied in remanding *Caouette*. The Supreme Court confirmed that companies that do not hold the NDA for an FDA-approved drug, which includes distributors of branded and generic drugs, are no more permitted to change the labeling of the drug than they are permitted to change the design. 133 S. Ct. at 2475-76.

### E. The Amount-in-Controversy Requirement Is Satisfied.

77. Although the Complaint seeks unspecified compensatory damages,[15] it is facially apparent from the Complaint that claims of each Plaintiff more likely than not exceed the sum or value of $75,000, exclusive of interest and costs.[16]

---

[14] *See, e.g.*, *Demahy*, 2012 WL 5261492, at *6 (confirming that "with few exceptions, courts have held that state-law tort claims against generic drug manufacturers, including design defect claims, are preempted after *Mensing*") (citations omitted); *In re Pamidronate Prods. Liab. Litig.*, 842 F. Supp. 2d 479, 484-85 (E.D.N.Y. 2012) (design defect, negligence and warranty claims against generic manufacturer were preempted); *Moore v. Mylan, Inc.*, No. 1:11–CV–03037–MHS, 2012 WL 123986, at *6-7 (N.D. Ga. Jan. 5, 2012) (design defect claim against generic manufacturer was preempted); *In re Reglan Litig.*, No. 289, slip op. at 8-9, 13 (N.J. Super. Ct. Law Div. May 4, 2012) (defective design, negligence, negligence per se, fraud, misrepresentation and suppression, constructive fraud, breach of warranties, consumer fraud, and unjust enrichment claims against generic manufacturer were all essentially failure-to-warn claims and therefore preempted); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243, No. Civ. 08-008 (GEB-LHG), 2011 WL 5903623, at *6, 8, 9 (D.N.J. Nov. 21, 2011) (design defect, negligence, breach of warranty, fraud, misrepresentation, failure to conform to representation, negligent misrepresentation, and consumer fraud claims against generic manufacturers were all preempted).

[15] California Civil Procedure Code §§ 422.30, 425.10(b) prohibits plaintiffs in personal injury or wrongful death actions from stating the amount of damages demanded, but requires plaintiffs to

(Footnote Cont'd on Following Page)

78.     The Complaint includes ten causes of action, and alleges that Plaintiffs' use of Abilify® caused "bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and other economic losses, and aggravation of previously existing conditions," and that "[t]he losses are either permanent or continuing, and Plaintiffs will suffer the losses in the future."  *E.g.*, Ex. A, ¶ 162.

79.     Plaintiffs seek recovery for compensatory damages, costs of treatment for Plaintiffs' injuries, damages for neuropsychiatric, mental, physical, and economic pain and suffering, and damages for mental and emotional anguish, among other damages.  *See* Ex. A, at 40-41 (Prayer for Relief).

80.     Specifically, Plaintiffs allege that their use of Abilify "caus[ed] harmful compulsive behaviors including compulsive gambling, compulsive shopping and hyper-sexuality," which "resulted in *substantial financial, mental, and physical damages*."  Ex. A, ¶ 3.

81.     The allegations in the Complaint are virtually identical to the over 100 *individual* complaints—including those of 66 plaintiffs who reside in the same 14 states as Plaintiffs represented in the *Evans* Complaint—filed by this same law firm in the federal MDL, *In re Abilify (Aripiprazole) Products Liability Litigation*, MDL No. 2734 (N.D. Fla.).  The only material difference between those complaints and this one is that here, the Complaint fraudulently joins McKesson in an effort to defeat diversity.

82.     The allegations in the Complaint are also substantially similar to other complaints filed in or removed to federal court and seeking more than $75,000 in damages.  *See Campbell v. Bridgestone/Firestone, Inc.*, No. CIVF051499-FVSDLB, 2006 WL 707291, at *2 (E.D. Cal. Mar. 17, 2006) (apparent from complaint that amount in controversy met where plaintiffs asserted strict products liability, negligence, and breach of warranty claims against multiple defendants and sought

---

(Footnote Cont'd From Previous Page)
state only whether the case is a "limited civil case" under $25,000.  Plaintiffs here designated the case as "unlimited (amount demanded exceeds $25,000)" in the civil case cover sheet.

[16]     Furthermore, there is supplemental jurisdiction over the remaining Plaintiffs under 28 U.S.C. § 1367 so long as "at least one named plaintiff in the action satisfies the amount-in-controversy requirement."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549, (2005).

compensatory damages, hospital and medical expenses and general damages, and loss of earning capacity); *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1107–08 (9th Cir. 2010) ("even though the state court complaint does not specify an amount" it satisfied amount in controversy requirement by requesting damages for, among other things, wrongful death, loss of consortium, and negligence, as well as funeral, medical and burial expenses); *McCoy v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002) ("courts have routinely held that when plaintiffs allege serious, permanent injuries and significant medical expenses, it is obvious from the face of the complaint that the plaintiff's damages exceeded the jurisdictional amount").

83.     On these facts, Defendant BMS reasonably asserts that the amount-in-controversy for each Plaintiff's claims in these actions exceeds $75,000, exclusive of interest and costs.

## IV.     PROCEDURAL REQUIREMENTS OF REMOVAL ARE SATISFIED

84.     This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).  Defendant BMS has received a copy of, but has not yet been served with, the Complaint.  Moreover, the Complaint was filed on April 30, 2018, which is less than 30 days prior to the date of this Notice.

85.     The Northern District of California is the federal judicial district encompassing the Superior Court of the State of California for Alameda County, where this suit was originally filed. Venue is therefore proper in this district under 28 U.S.C. §§ 84(c)(2) and 1441(a).

86.     Removal pursuant to 28 U.S.C. § 1441(a) requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action.  28 U.S.C. § 1446(b)(2)(A).

87.     On information and belief, as of the time of filing of this Notice, neither McKesson nor OAPI nor OPC has been served with the Complaint.  Therefore, neither McKesson nor OAPI nor OPC is required to join in or consent to the removal of this action.  *See Destfino v. Reiswig*, 630 F.3d 952, 957 (9th Cir. 2011) (finding an exception to the consent rules where a defendant has not been properly served at the time of removal).  Moreover, Defendant McKesson is fraudulently joined and therefore is not required to join in the removal.  *See United Computer Sys. Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).  The unidentified defendants Does 1-100 are not required

to consent to removal.  *See Hafiz v. Greenpoint Mortg. Funding*, 409 F. App'x 70, 72 (9th Cir. 2010) (nominal parties are not required to consent to removal).

88.    Defendant BMS is providing Plaintiffs with written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d), and shall file a copy of this Notice along with a Notice of Filing of Notice of Removal with the Clerk of the Superior Court of the State of California for Alameda County, where this action is currently pending.

89.    Pursuant to 28 U.S.C. § 1446(d), Defendant BMS is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California for Alameda County.

90.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders and other papers and filed in the state court action—as available from the state court docket at the time of filing this Notice—are attached hereto as **Exhibit A** (Summons, Complaint, and Civil Case Cover Sheet, all filed on April 30, 2018).

91.    If any question arises regarding the propriety of the removal of this action, Defendant BMS respectfully requests the opportunity to present a brief and be heard at oral argument in support of removal.

92.    No previous application has been made for the relief requested herein.

93.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and is an action between citizens of different states.

## V.    DEMAND FOR JURY TRIAL

94.    Defendant BMS hereby demands a separate jury trial on all claims and issues so triable for each Plaintiff.

NOTICE OF REMOVAL

1    WHEREFORE, Defendant BMS gives notice that the matter bearing Case No. RG18902958

2    pending in the Superior Court of the State of California for Alameda County is removed to the

3    United States District Court for the Northern District of California, and requests that this Court

4    retain jurisdiction for all further proceedings in this matter.

5

6    Dated:  May 3, 2018                          By:    _/s/ Sharon D. Mayo_____
                                                        SHARON D. MAYO

7                                                       *Attorney for Defendant Bristol-Myers Squibb*

8                                                       *Company*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL